548 S.E.2d 858

**Michael ALSTON, Petitioner,**

v.

**BLACK RIVER ELECTRIC COOPERATIVE, Respondent.**

No. 25310.

Supreme Court of South Carolina.

Heard March 6, 2001

Decided June 25, 2001

Robert P. Wood, of Rogers Townsend & Thomas, PC, of Columbia, for petitioner.

Hoover C. Blanton and Pope D. Johnson, III, of McCutchen, Blanton, Rhodes & Johnson, of Columbia, for respondent.

Wilburn Brewer, Jr., and Ashley C. Biggers, of Nexsen Pruet Jacobs & Pollard, LLC, of Columbia, and Robert E. Tyson, Jr., of Cayce, for Amicus Curiae, The Electric Cooperatives of South Carolina, Inc.

WALLER, Justice:

This case presents the novel issue of whether members of an electric cooperative should be *per se* disqualified from serving on a jury when the cooperative is a party. Affirming the trial court, the Court of Appeals rejected a rule of *per se* disqualification. *Alston v. Black River Elec. Coop.*, 338 S.C. 543, 527 S.E.2d 119 (Ct.App.2000). We granted a writ of certiorari and now reverse.

## FACTS

Petitioner Michael Alston sued respondent Black River Electric Cooperative ("Black River") for negligence in connection with a fire on his property. According to the complaint, Alston was building a house on his property which was served by Black River. Alston asked Black River to move a power line because it crossed over the house, but the power line was not moved. Alston alleged that during a storm on November 17, 1994, the splice in the power line failed, sending sparks to

the roof of Alston's house and causing a fire which destroyed the house.

The case proceeded to trial. During jury voir dire, seven jurors on the twenty-juror strike list identified themselves as customers, i.e., members, of Black River. Two of the three jurors on the alternate strike list were Black River members. Alston requested that the trial court excuse these jurors for cause; however, the trial court denied the motion. Four of the twelve seated jurors were Black River members, as was the alternate juror.[1] The jury returned a verdict in favor of Black River.

Alston appealed. His sole argument on appeal was that he was denied a fair and impartial jury because of the trial court's refusal to excuse Black River members from the jury panel. A divided panel of the Court of Appeals affirmed. *Alston, supra* (Anderson, J., dissenting). Rejecting a rule of *per se* disqualification, the Court of Appeals instead decided that "the party attempting to disqualify the potential juror must demonstrate actual bias" and the determination of whether a potential juror is competent to serve should be made by the trial court "on a case-by-case basis." *Id.* at 549, 527 S.E.2d at 122.

## ISSUE

To preserve the right to an impartial jury, should members of an electrical cooperative be *per se* disqualified from serving on a jury when the cooperative is a party to the lawsuit?

## DISCUSSION

 Under South Carolina law, litigants are guaranteed the right to an impartial jury. *See* S.C.Code Ann. § 14–7–1050 (Supp.2000) ("in all civil cases any party shall have the right to demand a panel of twenty competent and impartial jurors from which to strike a jury."). If a potential juror has an interest in the lawsuit such that she is "not indifferent in

---

1. The alternate juror did not participate in the deliberations.

the cause," the juror shall be deemed incompetent to serve on the jury. *See* S.C.Code Ann. § 14–7–1020 (Supp.2000).

 Under South Carolina's Rural Electric Cooperative Act, an electric cooperative is a non-profit membership corporation, and the excess revenues of the cooperative shall, unless otherwise determined by a vote of the members, "be distributed by the cooperative to its members as patronage refunds...." S.C.Code Ann. § 33–49–460 (1990).[2] Tort liability of the cooperative affects whether it has excess revenues to distribute. *See Bush v. Aiken Elec. Coop.,* 226 S.C. 442, 447–48, 85 S.E.2d 716, 718 (1955) ("regardless of the nature of the surplus revenue, there is no surplus to refund until all liabilities, including those for tort, have been discharged"). Furthermore, we have explained that members of a cooperative "at once take the place of the **stockholders and customers** of privately owned utilities; **they are both owners and customers** ...." *Bookhart v. Central Elec. Power Coop.,* 219 S.C. 414, 423, 65 S.E.2d 781, 784 (1951) (emphasis added).

In the instant case, the majority of the Court of Appeals stated that "the members of Black River are first and foremost customers of a utility. Their main concern is utility service, not profit." *Alston,* 338 S.C. at 548–49, 527 S.E.2d at 121. While this may be true, we reiterate that members are both customers **and** stockholders of an electric cooperative. *Bookhart,* 219 S.C. at 423, 65 S.E.2d at 784. As "owners," members of a cooperative clearly are entitled to excess revenues. *See* S.C.Code Ann. § 33–49–460. Since tort liability has a direct effect on whether the cooperative has any excess revenues to distribute to members, *see Bush, supra,* we find as a threshold matter that members of a cooperative have a pecuniary interest in a lawsuit involving that cooperative. The question then becomes whether, because of their pecuniary interest, we should presume that cooperative members are "not indifferent in the cause" thereby requiring their automatic disqualification from jury service. S.C.Code Ann. § 14–7–1020.

---

**2.** Under Black River's bylaws, excess revenues are paid in the form of credits to a member's account. Black River Bylaws, art. VII, § 2 ("The Cooperative is obligated to pay by credits to a capital account for each patron all such amounts in excess of operating costs and expenses.").

■ It is well-settled under South Carolina law that a stockholder in a corporation is incompetent to serve as a juror in a case in which the corporation is a party or has any pecuniary interest. *Southern Bell Tel. & Tel. Co. v. Shepard,* 262 S.C. 217, 222, 204 S.E.2d 11, 12 (1974) (" 'That a stockholder in a company which is a party to a lawsuit is incompetent to sit as a juror is so well settled as to be black letter law.' ") (quoting *Chestnut v. Ford Motor Co.,* 445 F.2d 967 (4th Cir.1971)). Alston argues that members of an electric cooperative are similar to corporate shareholders and therefore should be *per se* disqualified from serving on a jury when the cooperative is a party. We agree.

It is beyond dispute that members of a cooperative are stockholders and more. *Bookhart,* 219 S.C. at 423, 65 S.E.2d at 784 (members are both stockholders and customers). Arguably then, the interest of a cooperative member in a lawsuit involving the cooperative is even stronger than that of a stockholder when the stockholder's corporation is a party to a lawsuit. We therefore hold that a member of a cooperative "is incompetent to serve as a juror in a case in which the [cooperative] is a party." *Southern Bell,* 262 S.C. at 221, 204 S.E.2d at 12.

To hold otherwise, in our opinion, would compromise the right to an impartial jury which is guaranteed to all litigants. *See* S.C.Code Ann. § 14–7–1050. Indeed, the Court of Appeals in the instant case, as well as in a previous case involving an electric cooperative, has acknowledged the dangers which inhere when the jury includes members of the cooperative. In *Wall v. Keels,* 331 S.C. 310, 321, 501 S.E.2d 754, 759 (Ct.App. 1998), the Court of Appeals held that the cooperative's closing argument "unfairly appealed to the economic self-interests of the cooperative members sitting on the jury." Additionally, the Court of Appeals noted in *Wall* "the inherent difficulty [the plaintiff] faced in selecting a neutral jury," as well as the "real potential for bias in cases involving local cooperatives." *Id.* at 322, 501 S.E.2d at 760. In the case at bar, the Court of Appeals again cautioned the trial court "to be aware of the potential for bias in cases involving cooperatives." *Alston,* 338 S.C. at 549–50, 527 S.E.2d at 122

The comments by the Court of Appeals in both this case and *Wall* are tantamount to an acknowledgment that cooperative members serving on a jury have an economic interest in the outcome of the trial and almost certainly will be biased in favor of the cooperative. Given this inherent risk of impartiality, we are persuaded that cooperative members should be *per se* disqualified from jury service in such cases.

We are not unmindful of the potential burden on rural counties as a result of the adoption of a *per se* rule. There is the concern that in a rural county, many prospective jurors will be members of a cooperative. Although this is an important, and very real, concern, it should not prevent adoption of a *per se* disqualification rule. For example, in this case, only seven jurors on the twenty-juror strike list, two of the three jurors on the alternate strike list, and four of the twelve seated jurors were Black River members. These numbers indicate it would not be impossible to get a jury pool without members of the cooperative.

■ More importantly, however, it is fundamental that each party is entitled to a trial by an impartial jury. *See* S.C.Code Ann. § 14–7–1050; *see also* S.C. Const. art. I, § 14 ("The right of trial by jury shall be preserved inviolate."). Our adoption of a *per se* rule is based on principles of fairness and jury impartiality, and these goals simply trump the goal of having a trial in the particular county served by the cooperative. If a lawsuit arises where it is truly impossible to strike a jury without cooperative members, then a change of venue would be justified based on fairness concerns. *See* S.C.Code Ann. § 15–7–100(2) (1976) (the court may change the place of trial when there is reason to believe that a fair and impartial trial cannot be had therein); *see also Lancaster v. Fielder,* 305 S.C. 418, 409 S.E.2d 375 (1991) (where the Court affirmed trial court's grant of motion for a change of venue based on the assertion that an impartial jury could not be obtained in Union County; the Court reasoned that change of venue may have been justified by jurors' relationships with defendant doctor and hospital).

Finally, the law of other jurisdictions supports the adoption of a *per se* rule. Among the seven states that have addressed

this issue, the majority rule is *per se* disqualification. *See generally* Annotation, *Competency of Juror as Affected by his Membership in Co-operative Association Interested in the Case*, 69 A.L.R.3d 1296 (1976 & Supp.2000).[3] Only North Dakota and Mississippi have rejected a *per se* rule.[4]

Of the states that have adopted the *per se* rule, most of the courts have based the decision on the parallel between a corporate stockholder and a cooperative member. *See Salt River Valley Water Users' Ass'n v. Berry*, 31 Ariz. 39, 250 P. 356 (1926); *Thompson v. Sawnee Elec. Membership Corp.*, 157 Ga.App. 561, 278 S.E.2d 143 (1981); *Ozark Border Elec. Coop.*

---

**3.** Five states have adopted a *per se* rule of disqualification for members of a cooperative. *See Salt River Valley Water Users' Ass'n v. Berry*, 31 Ariz. 39, 250 P. 356 (1926) (treating members of association as ordinary corporate stockholders and upholding their disqualification from service on jury); *Thompson v. Sawnee Elec. Membership Corp.*, 157 Ga. App. 561, 278 S.E.2d 143, 145 (1981) ("It is clear that the members of an electric membership corporation are in the same position as the stockholders of a corporation ... as regards their right to share in the net earnings of the business. Accordingly, we conclude that the members of an electric membership corporation are disqualified from service as jurors in the trial of a case in which damages are sought from the corporation.") (citation omitted); *Ozark Border Elec. Coop. v. Stacy*, 348 S.W.2d 586, 589 (Mo.Ct.App.1961) (because members of a rural electric co-operative " 'are both owners and customers' and 'at once take the place of the stockholders and customers of privately owned utilities,' it would seem to be logical and proper that ... the same rule should be ... applied as in cases involving stockholders of other corporations and thus their disqualification for such service should be declared.") (quoting *Bookhart v. Central Elec. Power Coop.*, 219 S.C. at 423, 65 S.E.2d at 784); *Peanut Growers' Exch. v. Bobbitt*, 188 N.C. 335, 124 S.E. 625, 625 (1924) (holding trial court erred in refusing to strike for cause a juror who was a member of the plaintiff association, notwithstanding juror's assertion that he could be fair and impartial, because as a member, juror was "necessarily interested in the litigation"); *South Dakota v. Thomlinson*, 78 S.D. 235, 100 N.W.2d 121 (1960) (holding that a member of cooperative association had a "disqualifying interest" and should not have been allowed to sit on jury in prosecution for burglary of association's property).

**4.** *Garcia v. Coast Elec. Power Ass'n*, 493 So.2d 380, 383–84 (Miss.1986) (rejecting *per se* rule and stating that "[a]ny pecuniary gain the customer or member receives [from the cooperative] is practically nil"), *modified on other grounds by Whittley v. City of Meridian*, 530 So.2d 1341 (Miss.1988); *Cassady v. Souris River Tel. Coop.*, 520 N.W.2d 803, 806 (N.D.1994) (noting its history of "not adopting blanket disqualifications for jury service," the court held that actual bias on the part of a prospective juror must be established).

*v. Stacy,* 348 S.W.2d 586 (Mo.Ct.App.1961); *Peanut Growers' Exch. v. Bobbitt,* 188 N.C. 335, 124 S.E. 625 (1924). For instance, the Missouri Court of Appeals specifically relied on this Court's statement in *Bookhart* that members of a cooperative " 'at once take the place of the stockholders and customers of privately owned utilities; they are both owners and customers....' " *Ozark Border Elec. Coop. v. Stacy,* 348 S.W.2d at 588 (quoting *Bookhart,* 219 S.C. at 423, 65 S.E.2d at 784). The Missouri court reasoned that it was "logical and proper" to apply the same rule of disqualification as is applied in cases involving corporate stockholders. *Id.* at 589, 65 S.E.2d 781. We, too, find it is both logical and proper to apply our own rule of *Southern Bell* to cases involving cooperative members. By doing so, jurors in cases where a cooperative is a litigant shall be selected "with no suspicion that their verdict would be colored by their personal interests." *Salt River Valley Water Users' Ass'n v. Berry,* 250 P. at 357.

## CONCLUSION

In sum, we hold that when a cooperative is a party to a lawsuit, a cooperative member has an inherent pecuniary interest in the case. Thus, the bias of a cooperative member shall be presumed—just as a corporate stockholder's is when the corporation is a party. *See Southern Bell, supra.* Accordingly, to preserve a litigant's "right to demand a panel of twenty competent and impartial jurors from which to strike a jury," S.C.Code Ann. § 14–7–1050, we adopt a *per se* rule disqualifying cooperative members from serving on a jury when the cooperative is a party to the lawsuit. The Court of Appeals' opinion is therefore

**REVERSED.**

TOAL, C.J., and MOORE, BURNETT and PLEICONES, JJ., concur.